IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 7:20-CV-00239 |
| 43.412 ACRES OF LAND, MORE OR LESS, SITUATED IN HIDALGO COUNTY, TEXAS; HIDALGO COUNTY IRRIGATION DISTRICT NO. 2;  ET AL.,<br>Defendants. | § § § § § § | |

## HIDALGO COUNTY IRRIGATION DISTRICT NO. 2'S UNOPPOSED MOTION FOR MODIFICATION OF SCHEDULING ORDER

Defendant Hidalgo County Irrigation District No. 2 ("HCID2") respectfully asks the Court to modify the governing scheduling order (Dkt. No. 19) as follows.

### BACKGROUND

1. HCID2 is a political subdivision of the state of Texas operating under the provisions of Chapter 58, Title 4 of the Texas Water Code and Article XVI, Section 59 of the Texas Constitution. HCID2 supplies water for irrigation, municipal, industrial, and domestic uses in Hidalgo County. Its system includes 46 miles of earthen canals, 21 miles of lined canals, and 227 miles of concrete pipelines for a total of 294 miles of waterway.

2. The United States filed this condemnation suit in August 2020 in furtherance of President Trump's border-wall project. Shortly thereafter, the United States deposited its estimate of just compensation into the Court's registry and began construction activity on the subject tracts.

3. In November 2020, the Court entered a scheduling order that included the

following discovery-related deadlines:

- June 25, 2021: Deadline for all parties to designate expert witnesses and provide expert reports.

- August 9, 2021: Deadline for all parties to designate rebuttal-expert witnesses and provide rebuttal-expert reports.

- August 27, 2021: Discovery deadline.

*See* Dkt. No. 19 at 2 (collectively, "the Discovery Deadlines"). The scheduling order explained that the Discovery Deadlines could not be modified "except by leave of Court upon showing of good cause." *Id*. at 3.

4. In January of 2021, the Biden administration paused all border-wall-related construction activities. It is still unknown whether or when construction may recommence on the subject tracts—and, if it does recommence, what form it will ultimately take.

## ARGUMENT

5. Because of HCID2's important role in South Texas's economy, it is vital to minimize the border wall's impact on HCID2's operations. Acknowledging this, the United States has engaged in a continuous dialogue with HCID2 since before this suit was filed. The United States has agreed, among other things, to re-vest certain portions of its taking (i.e., to return ownership to HCID2) after construction is completed and to consider alternative designs for the infrastructure in and around Carlson Lake (a reservoir that is part of HCID2's irrigation system).

6. While all of these developments are welcome, they have created a "moving target" for HCID2's appraisal expert. That is to say, the expert can appraise the proposed taking outlined in the United States' Complaint (Dkt. No. 1), but the actual taking is going to have a significantly different scope. Thus, if the appraiser bases his report on the Complaint, he will have to

substantially revise the report after the scope of the taking is finalized—which means the money HCID2 spends on the appraiser's initial report will be wasted.

7. Moreover, the nature of the taking makes the appraisal analysis unusually difficult here. The subject tracts are irregularly shaped strips of land devoted to irrigation. Such tracts do not normally trade hands in the marketplace, which means there are no "comparable sales" data on which to base an appraisal. HCID2's appraiser will have to utilize other, unusually time- and labor-intensive methods to complete his report. *Cf. United States v. 1,380.09 Acres of Land*, 574 F.2d 238, 240–41 (5th Cir. 1978), *rev'd on other grounds sub nom. U. S. v. Bodcaw Co.*, 440 U.S. 202 (1979) (discussing the virtual impossibility of using market data to appraise narrow strips of land along a waterway).

8. Combined, the uncertain scope of the taking and the difficulty of the appraisal assignment put HCID2 in a Catch-22. To meet the current expert-report deadline of June 25, 2021, HCID2's appraiser will have to base his report on the outdated project information in the Complaint that is certain to change. The only way out of this Catch-22 is for the Court to extend the discovery deadlines until the United States finalizes its construction plans.

9. The Court has broad discretion to modify scheduling orders. *See Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir.2008). And "courts must use their equity powers to put an owner of land being condemned in as good position as he would have been if his property had not been taken, or as nearly so as is possible under the given circumstances." *United States v. Lee*, 360 F.2d 449, 452 (5th Cir. 1966). Combined, these principles dictate that the Court should extend the discovery deadlines in this matter until the United States finalizes the details of its taking. If the Court declines to do so, HCID2 will be forced to spend money on an appraisal that is certain to need

substantial revision.

10. Based on related concerns about border-wall uncertainty, the United States previously filed a joint motion for leave to modify the scheduling order. *See* Dkt. No. 29. The Court denied that motion, focusing on the United States' control over its own construction activities and timelines. *See* Dkt. No. 30 at 2. This motion is different. HCID2 has no control over whether, when, or how construction will proceed. Thus, unless the Court extends the Discovery Deadlines, HCID2 will have to pay for an appraisal report that will almost certainly require significant revisions (at substantial cost). A condemnee should not have to waste money in this manner. *See Lee*, 360 F.2d at 452.

11. Counsel for HCID2 have conferred with counsel for the United States, who indicated that the United States does not oppose the relief requested by this motion.

## CONCLUSION AND PRAYER

12. For these reasons, HCID2 respectfully asks the Court to extend the Discovery Deadlines as follows:

- Continue the expert deadline so that it occurs 90 days after the United States finalizes its construction plans;

- Continue the rebuttal-expert deadline so that it falls six weeks after the revised expert deadline; and

- Continue the overall discovery deadline so that it falls three weeks after the revised rebuttal-expert deadline.

HCID2 is mindful that this request involves an element of uncertainty because it is not clear when the United States will finalize its construction plans. Unfortunately, unless the Court orders the United States to finalize its construction plans by a specific date, a floating expert-disclosure deadline is the only way to protect HCID2 from having to waste money on a useless appraisal.

13. HCID2 also requests all other and further relief, in law or equity, to which it may be entitled.

          Respectfully submitted,

          **MARRS ELLIS & HODGE LLP**

          /s/ Luke Ellis
          Luke Ellis ("Attorney-in-Charge")
          Texas Bar No. 24038878
          Southern District Id. No. 612594
          lellis@mehlaw.com
          Zev Kusin
          Texas Bar No. 24070096
          Southern District Id. No. 1636769
          zkusin@mehlaw.com
          805 West 10th Street, Suite 400
          Austin, Texas 78701
          512-215-4078
          512-628-7169 fax

          **Attorneys for Defendant Hidalgo County Irrigation District No. 2**

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 7, 2021, a true and correct copy of the foregoing was sent to the following:

Baltazar Salazar                                                          ***Via CM/ECF***
baltazar.salazar@usdoj.gov
ASSISTANT UNITED STATES ATTORNEY
600 East Harrison Street, Suite 201
Brownsville, Texas 78520
956-983-6057
956-548-2775 fax
*Attorney-in-Charge for Plaintiff*

                                                          /s/ Luke Ellis
                                                          Luke Ellis